**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 95-10770**
_____

**AGUSTIN OLIVA,**

**Plaintiff-Appellant,**

**versus**

**SHIRLEY S. CHATER, COMMISSIONER OF SOCIAL SECURITY,**

**Defendant-Appellee.**

_____

**Appeal from the United States District Court**
**for the Northern District of Texas**
**( 5:94-CV-018-C )**
_____

August 19, 1996

Before POLITZ, Chief Judge, JOLLY and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Agustin Oliva challenges the dismissal, for lack of jurisdiction, of the administrative decision not to reopen. The appeal is **DISMISSED**.

I.

This action concerns three applications for disability insurance benefits (DIB) under Title II of the Social Security Act,

_____

[*]     Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

42 U.S.C. §§ 401-431; the last two also sought supplemental security income (SSI) benefits, under Title XVI of the Act, 42 U.S.C. §§ 1381-1382(i). (All of the administrative action occurred before transfer to the Commissioner of Social Security.)

In April 1986, Oliva filed his first application for DIB, beginning a year earlier; it was initially denied, was denied again in August 1987, after a hearing by an Administrative Law Judge, and review was denied by the Appeals Council in February 1988. No review was sought in district court.

In December 1988, Oliva filed a second application, this time seeking DIB and SSI. It was denied in June 1989, and no further action was taken.

In March 1990, Oliva filed his third application. It is the administrative action under review; it sought DIB beginning in April 1985, and SSI only as of March 1990. That June, the SSI claim was approved upon finding that Oliva was disabled beginning on March 1, 1990; but, the DIB claim was denied upon finding that he was not disabled on any date through December 1988, when he was last insured for DIB.

That September, Oliva's request for reconsideration and reopening of his prior applications was denied; but, pursuant to his request, a *de novo* hearing was held before an ALJ in August 1991. The ALJ's May 1992 decision stated:

> The previous finding of disability on March 1, 1990, and subsequent allowance of Title XVI

> [SSI] as of March 26, 1990, has provided [Oliva] all the benefits to which he is eligible. There is not sufficient evidence to support the reopening of the prior final and binding decision and determinations of ... 1987 and ... 1989.

Accordingly, the ALJ concluded that Oliva was not entitled to DIB, but was entitled to the SSI which had been granted.

Oliva filed for review in district court. It held that *res judicata* applied to the first two administrative actions, and, therefore, dismissed for lack of jurisdiction.

## II.

Concerning jurisdiction *vel non*, "federal court review of the Secretary's denial of a motion to reopen a claim lies only where a colorable constitutional question is at issue." *Torres v. Shalala*, 48 F.3d 887, 890 (5th Cir. 1995). If the challenge is not on constitutional grounds, the Social Security Act "does not afford subject-matter jurisdiction" for such review. *Califano v. Sanders*, 430 U.S. 99, 109 (1977). Restated, "a federal court does not have jurisdiction to review the non-constitutional bases of the Secretary's decision on a petition to reopen." *Thibodeaux by Thibodeaux v. Bowen*, 819 F.2d 76, 80 (5th Cir. 1987). Therefore, to determine jurisdiction, we must answer two inquiries: whether the Secretary denied reopening; and whether a colorable constitutional question is at issue.

## A.

Oliva claims that, despite the ALJ's stating that there was insufficient evidence to support reopening, his claim was reopened constructively because the ALJ reconsidered on the merits the prior administrative decisions. This contention fails for the following reasons.

Oliva requested a hearing on his concurrent DIB and SSI applications; as a result, the ALJ's decision addressed both. "[R]eceiv[ing] a hearing on [a] petition to reopen does not convert the denial of [a] request for a hearing on the merits of [a] claim into a reviewable decision." *Thibodeaux*, 819 F.2d at 80.

The ALJ's analysis was necessary for deciding Oliva's SSI application. The ALJ's discussion of evidence offered to support reopening Oliva's DIB application was a "threshold inquiry"; this does not constitute a reconsideration on the merits. *Triplett v. Heckler*, 767 F.2d 210, 213 (5th Cir. 1985), *cert. denied*, 474 U.S. 1104 (1986).

Moreover, the "reopened constructively" contention is rebutted directly by the ALJ's statement that the application was not reopened because of insufficient evidence to justify it. Because the application was not reopened, the prior decisions have preclusive effect; we can review this latest/final decision on the earlier applications only if a colorable constitutional question is raised.

B.

4

In June 1989, Oliva's second application was denied.  He did not take further action on it.  He claims that the notice he received for that denial violated his right to due process because it did not indicate that if he did not appeal, the determination would be final and he might lose benefits.  As in *Torres,* 48 F.3d at 893, we need not reach whether the language in the notice violated due process, because we conclude that Oliva lacks standing to present this claim.

*Torres* adopted the Tenth Circuit's requirement in *Gilbert v. Shalala*, 45 F.3d 1391, 1393 (10th Cir.), *cert. denied*, 116 S. Ct. 49 (1995)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), that, "to show standing to raise a constitutional claim ... [, the a]ppellant [must show a] causal connection between the allegedly misleading language in the ... notice[] and his subsequent failure to seek judicial review." *Torres,* 48 F.3d at 893*.*  Torres' three DIB applications were denied, *id.* at 889-90; in conjunction with his second, he received four adverse determination notices at different stages in the administrative process, *id*. at 893.  He challenged the language in the first two (the language in the third and fourth was more detailed) on due process grounds, claiming, as does Oliva, that our court should follow the Ninth Circuit and find the language unconstitutional because it misled him and "did 'not clearly indicate that if no request for reconsideration is made, the determination is final.'"  *Id*.

(quoting *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990)).

Instead, our court followed the Tenth Circuit's decision in *Gilbert*. Noting that Torres "exercised his right to appeal despite the language in the first two notices, and chose not to seek judicial review despite the fourth notice's detailed instructions", our court held that he had not relied upon the allegedly inadequate notice and thus lacked standing. 48 F.3d at 893. It reasoned that "[t]o satisfy the causal connection requirement of *Defenders of Wildlife*, [Torres] must show that he *relied on* the challenged language in the ... notices." *Id*.

Oliva asserts that, under *Gonzalez*, he has a constitutional claim that the notice he received for his second application was defective and that inadequate notice is a due process violation *per se*. But, on the other hand, he conceded at oral argument that, under *Torres*, he has no inadequate notice claim for his first application because he took administrative appeals. He urges, however, that he does have a claim under *Torres* for the second application notice, because he did not appeal that denial. Most significantly, however, Oliva does not assert that the second application notice language affected his decision not to seek review.

Indeed, such an argument would be far-fetched. The notice after denial of the second application was identical to that for

6

the first.  Because Oliva sought review of that first denial, despite the language in its notice, he cannot claim that language in the identical notice kept him from doing so the second time around.

In short, Oliva has not shown any causal connection between the claimed inadequate notice and his failure to seek review of his second application denial.  Accordingly, he lacks standing to raise this constitutional claim.

### III.

Because the Secretary declined to reopen Oliva's case and he has not raised a colorable constitutional claim, we have no jurisdiction over this appeal.  Accordingly, we do not reach any of the other issues presented by Oliva.  The appeal is

*DISMISSED*.

7